996 P.2d 1059 (2000)
2000 Utah Ct. App. 011
STATE of Utah, in the Interest of C.K. and J.K., persons under eighteen years of age.
State of Utah, Appellant,
v.
C.K. and S.K., Appellees.
No. 990068-CA.
Court of Appeals of Utah.
January 27, 2000.
*1060 Jan Graham, Atty. Gen., and John Peterson, Attorney General's Office, Salt Lake City, for Appellant.
Scott L. Wiggins, Arnold & Wiggins, PC, Salt Lake City, for Appellee C.K.
John E. Laherty, Laherty & Associates, PC, Salt Lake City, for Appellee S.K.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before GREENWOOD, P.J., BENCH, and BILLINGS, JJ.

OPINION
GREENWOOD, Presiding Judge:
¶ 1 The State appeals the juvenile court's denial of its petition to terminate S.K.'s (Mother's) parental rights to C.K. and J.K. We affirm.

RELEVANT FACTS
¶ 2 C.K. (Father) and Mother are the natural parents of C.K., a ten-year-old boy, and J.K., a nine-year-old boy. Father and Mother divorced, and Mother had custody of the children. Mother then married Mark Garrard, who also had custody of three of his own children. Mr. Garrard brought those children to live in the home with Mother, C.K., and J.K. Another child, R.G., was later born to Mother and Mr. Garrard.
¶ 3 On June 13, 1995, all six children were removed from the home after allegations of physical abuse and head lice infestation. The *1061 children returned to the home approximately two months later under Family Preservation and Protective Supervision Services from the Department of Child and Family Services (DCFS). Upon motion by the State, the juvenile court dismissed the pending petition on January 24, 1996.
¶ 4 Nevertheless, reports of physical abuse, physical and medical neglect, and emotional maltreatment continued, and, on July 1, 1996, the children were again removed from the home after one of the children phoned the police. The child reported that he and the other children were hungry because Mother had locked up the food. Indeed, inspecting the home, police found the cupboards locked and filthy conditions in the home. The children all had head lice and had eaten only once in the past twenty-four hours.
¶ 5 At the resulting shelter hearing, the court awarded custody of C.K. and J.K. to DCFS. Father, who had remarried, requested custody, which the court denied because conditions at his home were unsuitable at that time. The other siblings were placed with relatives.
¶ 6 DCFS provided Mother and Father separate service plans with a return-home goal. Mother was required to (1) undergo a psychological evaluation and follow any resulting recommendations, and (2) locate and maintain a permanent, clean residence. The service plans were to run from August 16, 1996, to February 16, 1997.
¶ 7 Another set of separate service plans was issued to both parents on February 16, 1997. Mother's new plan required her to (1) participate in individual therapy, (2) attend anger management classes, (3) attend parenting classes that focus on learning-disabled children or children who suffer from attention deficit hyperactivity disorder, and (4) maintain a permanent, clean residence. This plan was to continue until August 16, 1997.
¶ 8 At the twelve-month dispositional hearing, see Utah Code Ann. § 78-3a-311 (1996 & Supp.1999), the juvenile court found DCFS had provided appropriate services to the parents but that the parents had only partially completed the service plans. Based upon unrebutted evidence from the children's therapist that visits between the parents and C.K. and J.K. were not helpful to the children, the court concluded the children could not be safely returned to either parent and ordered termination of reunification services. See id. The court also suspended all visitation between both parents and the children.[1]
¶ 9 That same day, the State filed a petition on behalf of C.K. and J.K. to terminate parental rights of both parents. The petition alleged that (1) the parents had abused C.K. and J.K., (2) the parents were unfit or incompetent, (3) the parents did not remedy the circumstances leading to the children's removal, (4) the parents failed to make adjustments required to allow return of the children, (5) the parents only made token efforts toward retaining their parental rights, and (6) the children's best interests favored adoption by other parents.
¶ 10 Trial on the State's petition occurred on May 7, 8, and 28, 1998, during which both parents and the State presented witnesses and exhibits. After conclusion of the trial, the trial court entered its findings of fact. Regarding Mother's unfitness or incompetence as a parent, see Utah Code Ann. § 78-3a-407(3) (1996), the court found that C.K. and J.K., as well as the other children, were physically abused by Mr. Garrard and neglected while in Mother's care. Because Mr. Garrard had moved out of the home, however, the trial court found that the physical abuse basis for removing the children "had been resolved." The court also found that Mother did not understand and was incapable of caring for, the special needs of C.K. and J.K.[2] Finally, despite Mother's efforts to seek out and pursue parenting services, the trial court found her success during counseling did not necessarily prove she was capable of handling C.K. and J.K. As the trial court noted, "her inability to cope with five *1062 children who `destroyed' the home when they returned from school and her expressed inability at visits to deal with C.K. and J.K. unless they were medicated, suggest that she may not be able to parent these children who have special needs."
¶ 11 Addressing Father's and Mother's failure to remedy the circumstances surrounding the removal of their children from Mother's home, see Utah Code Ann. § 78-3a-407(4) (1996), the trial court found differing attitudes in each parent. Father was very interested in the children during his visits with them. Mother, on the other hand, would not agree to visits with the children unless they were medicated. She also attempted to disrupt Father's visits with the children by making malicious reports to DCFS about Father. Both C.K. and J.K. expressed interest in visiting their father, but made no such comments about visiting their mother.
¶ 12 The trial court acknowledged that each parent had been issued two separate service plans. The court found that each parent had complied with their service plans; however, Mother's compliance, the court noted, was motivated by the fact that they were required, not by "a genuine effort to modify the circumstances which led to [her children's] removal." The court found that Father, with the help of his wife, could appropriately parent the children.
¶ 13 Finally, in considering the best interests of each child, see Utah Code Ann. § 78-3a-402(2) (1996), the court recounted the testimony of the children's psychologists, who had suggested the children be placed together in the same home. Both psychologists also suggested that the children be placed with parents who could provide "intellectual stimulation." The trial court stated it did not agree with the State's theory
that it would be best for C.K. and J.K. to be raised by parents other than their own and that without such they might be intellectually or socially less well off. The [trial court] does not subscribe to the philosophy, apparently espoused by some people, that we should terminate parental rights for parents who can't offer all that other parents can provide for their children. Application of such a policy would tend toward "elitism" and in the process destroy the fundamental unit of our society and deny parents who can parent, though less well perhaps, their constitutional right to parent their children.
¶ 14 Based on these findings of fact, the trial court entered its legal conclusions. The trial court concluded the State did not prove by clear and convincing evidence that Mother and Father had abused or neglected the children. Regarding Father, the court concluded that his mental limitations would not detrimentally affect his ability to care for C.K. and J.K. when "he has a capable and supportive wife who recognizes both his and his children['s] problems and limitations and who has demonstrated that she is willing to help him raise his children." As for Mother, the court concluded that
[t]he State has established by clear and convincing evidence that [Mother] has not been an appropriate mother in the past and may not be able to parent C.K. and J.K. without their grandmother's involvement. The State has also established that [Mother] does not appreciate the needs of C.K. and J.K. and may not be able to meet those needs.
....
[However,] the State has failed to prove by clear and convincing evidence, especially in light of the conclusions reached with respect to the father, that it would be in the best interests of the children for her rights to be terminated. While she may not be able to act as the custodial parent for the children, her continued involvement in their life as a mother divorced from their father may yet be important to their well-being.
¶ 15 The juvenile court dismissed the State's petition to terminate Mother's and Father's parental rights and ordered J.K. and C.K. be placed with Father and his wife. The court further ordered visitation rights for Mother in accordance with section 30-3-35 of the Utah Code. The State then filed this appeal.

*1063 ISSUES AND STANDARDS OF REVIEW
¶ 16 The issues presented by the State for our review are: (1) whether the trial court's findings adequately support its legal conclusions; (2) whether the trial court adequately explained why Mother's parental rights should be preserved; and (3) whether the trial court erroneously applied a parental presumption in favor of Mother after having found her to be unfit.
¶ 17 "We will disturb the juvenile court's decision not to terminate parental rights only if its findings are clearly erroneous." In re J.N., 960 P.2d 403, 407 (Utah Ct.App.1998) (citing Utah R. Civ. P. 52(a)); In re P.H., 783 P.2d 565, 570 (Utah Ct.App.1989). "The clearly erroneous standard `requires that if the findings ... are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made, the findings ... will be set aside." Id. (quoting In re T.E., 761 P.2d 956, 957 (Utah Ct.App.1988)) (alteration in original) (other citations and quotation marks omitted). Questions about the legal adequacy of findings of fact and the legal accuracy of the trial court's statements present issues of law, which we review for correctness, according no deference to the trial court. See State v. Pena, 869 P.2d 932, 936-37 (Utah 1994); cf. In re H.J., 986 P.2d 115, 120 (Utah Ct.App.1999).

ANALYSIS
¶ 18 A juvenile court, upon petition by an interested party, may terminate the parental rights of either parent. See Utah Code Ann. §§ 78-3a-404, -407 (1996). Before the court takes such profound action, however, it must conduct a bifurcated analysis, reaching two distinct findings. See In re M.L., 965 P.2d 551, 561 n. 13 (Utah Ct.App. 1998). First, the court must find that a specific ground for termination exists, finding the parent unfit or incompetent based on a ground enumerated in section 78-3a-407 of the Utah Code. See id. Second, the court must find that termination of parental rights serves the best interests of the child. See id.; Utah Code Ann. §§ 78-3a-402(2), -406(3) (1996); see also In re R.A.J., 991 P.2d 1118, 1120 (Utah Ct.App.1999) (noting bifurcated analysis). Each finding must be based on clear and convincing evidence. See Utah Code Ann. § 78-3a-406(3) (1996).
¶ 19 Complying with this two-part analysis, the trial court in this case first found the State had not sustained its burden in proving that grounds existed for terminating Father's parental rights. Our concern, however, is not with that finding because the State only challenges the sufficiency of the findings regarding Mother. Specifically, the State argues the trial court did not adequately explain why it refused to terminate Mother's parental rights when it had terminated her visitation rights at the permanency hearing in August 1997 and found her to be an unfit parent at trial.
¶ 20 In examining Mother's fitness as a parent, the trial court found that "her inability to cope with five children who `destroyed' the home when they returned from school and her expressed inability at visits to deal with C.K. and J.K. unless they were medicated, suggest that she may not be able to parent these children who have special needs." The court also concluded that "[t]he State has established by clear and convincing evidence that [Mother] has not been an appropriate mother in the past and may not be able to parent C.K. and J.K. without their grandmother's involvement." Although the trial court could have been more explicit regarding unfitness, we believe the court's statement on Mother's inability to parent these children indicates that it found at least one ground for terminating her parental rights existed. See Utah Code Ann. § 78-3a-407 (1996) (permitting juvenile court to terminate parental rights based on any one of eight specific grounds).
¶ 21 The State is correct that a trial court does not have unbridled discretion not to terminate parental rights once it finds that a ground for termination exists. See In re M.C., 940 P.2d 1229, 1236-37 (Utah Ct.App.1997). We disagree with the State, however, that the trial court's findings regarding the best interests of C.K. and J.K. were inadequate. The court was only obligated to enter findings of fact as established by clear and *1064 convincing evidence. See In re R.A.J., 991 P.2d 1118, 1119 (Utah Ct.App.1999). In its findings, the trial court rejected the State's argument that it would be in the children's best interest to be raised by "parents other than their own." The trial court then concluded that the State had failed to present clear and convincing evidence  a burden that squarely fell on the State  that the best interests of the children would be served by terminating Mother's parental rights.
¶ 22 We also find no reversible error in the trial court's suggestion that the children's continued relationship with Mother may benefit them in the future. We recognize that such contingencies generally would not support a court's conclusions regarding a child's best interests. The facts of this case, however, warrant an exception. Both C.K. and J.K. are old enough to know their mother and have established a relationship with her. Moreover, both children are in the custody of their biological father and his wife, whom the trial court found to be fit parents. Continued parental rights for Mother also means that, although she does not have custody of C.K. and J.K., she still has an obligation to provide monetary support for them. In light of these considerations, we cannot say the trial court's practical approach was clearly erroneous or was inconsistent with the statute's purpose. See id. at 1121 (upholding trial court's refusal to terminate father's parental rights when child remained in foster parents' permanent custody, petitioner failed to show how terminating the parental relationship would benefit child, and father would be obligated to continue support).[3]
¶ 23 Finally, we address the State's contention that the trial court misapplied the language found in Utah Code Ann. § 62A-4a-201 (1999), which establishes a presumption that it is in the best interests of children to be raised by their natural parents. According to the trial court, the State's evidence suggested that C.K.'s and J.K.'s best interests would be served "in a more stimulating intellectual environment." Although the court agreed that some level of intellectual stimulation may be an appropriate consideration in some cases, it correctly noted, "that is not the test for determining whether it is in the best interests of children to have the parental rights of their natural parents terminated.... If it were, the right of the vast majority of parents to raise their children would likely be in jeopardy." The court found only that the search for a perfect parent, as it characterized the State's argument, was not appropriate when the State had not met its burden to justify terminating parental rights. This statement was primarily addressed to arguments regarding Father's fitness, not Mother's. Because the court found the State had not met its burden of proof regarding Father, the finding was not a misapplication of the parental presumption.
¶ 24 In sum, we conclude adequate findings supported the trial court's decision to maintain Mother's parental rights. The State did not satisfy its burden to present clear and convincing evidence as to why terminating those rights was in the best interests of C.K. and J.K. Practical considerations also supported the trial court's ruling. The trial court did not misapply the parental presumption, but correctly noted that the absence of optimal conditions does not, alone, overcome a parent's constitutional right to continued involvement with his or her children. Accordingly, we affirm the trial court's denial of the State's petition to terminate Mother's parental rights.
¶ 25 WE CONCUR: RUSSELL W. BENCH, Judge, and JUDITH M. BILLINGS, Judge.
NOTES
[1] The trial court did not reinstate visitation until December 17, 1998, resulting in a sixteen-month period during which the children had no contact with either parent.
[2] C.K. has been diagnosed with attention deficit hyperactivity disorder and J.K. has been diagnosed with attention deficiency disorder. Both children suffer emotionally and academically.
[3] The State asks us to reverse the trial court's ruling on the basis that the court, in part, considered Father's parental fitness when it decided to maintain Mother's parental rights in the best interests of the children. "If the mother is unfit," the State argues, "it does not matter whether or not the father is fit, unfit, or has custody." We disagree. Nowhere does the statute mandate that the court independently evaluate each parent. As noted above, the trial court could not determine Mother's parental status in a vacuum. Practical considerations, such as the boys' established relationship with Mother, their ages, and the fact that only Father had custody of the children, all properly played a part in the trial court's evaluation.