171 P.3d 480 (2007)
2007 UT App 341
In the Matter of the ADOPTION OF T.H., a minor.
M.G., Petitioner and Appellant,
v.
M.S.H., Respondent and Appellee.
No. 20060659-CA.
Court of Appeals of Utah.
October 18, 2007.
*481 Richard G. Hackwell, Salt Lake City, for Appellant.
Marsha M. Lang, Salt Lake City, for Appellee.
Before BENCH, P.J., McHUGH and ORME, JJ.

OPINION
McHUGH, Judge:
¶ 1 M.G. (Stepfather) appeals the trial court's order dismissing his adoption petition on the ground that the parental rights of M.S.H. (Father) could not be terminated without clear and convincing evidence that termination would be in T.H.'s (Daughter) best interests. We affirm.

BACKGROUND
¶ 2 In February 1990, Daughter was born to Father and his then wife (Mother). In 1999, Father and Mother divorced in a bifurcated proceeding that left the issues of child custody and support pending (the divorce court action). Those issues were still pending in September 2000, when Father was arrested, in what would become the first of two prosecutions, for sexual exploitation of a minor.[1] Following his arrest, Father was jailed for seven days and was then released from custody to await trial.
¶ 3 While child custody issues were still pending, Father offered to stipulate to a temporary order in the divorce action, which would allow him to regain visitation[2] with Daughter if certain conditions were met. The divorce court approved the stipulated temporary order and entered it into the record. The temporary order barred Father from contacting Daughter until he had: (1) completed a psychiatric evaluation conducted by a qualified psychiatrist, not a general practitioner, including taking any medication if found necessary; (2) provided evidence of satisfactory progress in a sex offender treatment program; (3) submitted a report from sex offender treatment and an evaluation from his psychiatrist to Daughter's psychologist and the guardian ad litem showing satisfactory progress; and (4) complied with a reunification plan created by Daughter's psychologist. Father did not receive a copy of the stipulated temporary order at the time it was approved. However, the stipulation was drafted by Father's counsel and read into the record during a hearing at which Father was present.
¶ 4 Eventually, Father pleaded guilty to attempted sexual exploitation of a minor and dealing in material harmful to a minor, both third degree felonies. Prior to sentencing, Father requested entry into the State's sex offender treatment program, but was informed he would not be admitted until after sentencing. Larry Fox, Ph.D., conducted a psychological evaluation of Father as part of *482 his presentence report.[3] Father was sentenced to two consecutive terms of zero to five years incarceration in the Utah State Prison. Father's sentence was suspended, and he was placed on probation, which included ninety days jail time. Father served sixty days of the ninety-day sentence and was released from custody in September 2001.
¶ 5 In the fall of 2001, following his release from state custody, Father unsuccessfully attempted to contact Mother by telephone. Mother returned Father's telephone call and told him not to call anymore. In May 2002, Father was arrested and charged with a second incident of sexual exploitation of a minor. While the second set of charges was pending, the divorce court action was finalized. The temporary order, barring Father from contacting Daughter, was incorporated into the divorce court's permanent order. Father admits he received a copy of the final order.
¶ 6 Eventually, Father pleaded guilty to two counts of sexual exploitation of a minor in the second criminal action. Father was sentenced to two concurrent terms of one to fifteen years in the Utah State Prison, and he remained incarcerated until October 2005, when he was released on parole.
¶ 7 Sometime after the divorce, Mother married Stepfather. Shortly before Father's release, Stepfather filed a petition with the district court to adopt Daughter and sought to terminate Father's parental rights on grounds of abandonment and unfitness. At the termination hearing, Stepfather attempted to establish a prima facie case for abandonment based on Father's failure to contact Daughter for more than six months, show the normal interest of a natural parent without just cause, maintain regular contact and communication with Mother, and complete the conditions of the stipulated temporary order, which would have allowed him visitation with Daughter. See Utah Code Ann. § 78-3a-408(1) (Supp.2007) (discussing prima facie evidence of abandonment). Stepfather also attempted to prove a prima facie case of unfitness based on Father's convictions of attempted sexual exploitation of a minor and sexual exploitation of a minor. See id. § 78-3a-408(6) (discussing prima facie evidence of unfitness). However, Stepfather did not present any evidence that directly addressed whether terminating Father's parental rights would be in the best interests of Daughter.[4]
¶ 8 Following the hearing, the district court determined that Stepfather had failed to prove either Father's abandonment or his unfitness by clear and convincing evidence. The court also noted that even if the evidence supported a prima facie case for abandonment, Father had rebutted the presumption because the stipulated temporary order precluded his contact with Daughter. Furthermore, the court concluded that even if Father had not rebutted the presumption and clear and convincing evidence supported a ground for termination, Father's parental rights could not be terminated because there was no evidence presented that termination would be in Daughter's best interests.[5] Stepfather appeals.

ISSUE AND STANDARDS OF REVIEW
¶ 9 Stepfather argues that the district court misinterpreted Utah Code section 78-30-4.16, see Utah Code Ann. § 78-30-4.16 (Supp.2007), as requiring clear and convincing evidence that Daughter's best interests *483 would be served by terminating Father's parental rights. To the extent Stepfather challenges the district court's interpretation of Utah Code section 78-30-4.16, he raises "questions of law that we review for correctness, giving no particular deference to [the district] court['s] decisions." In re adoption of B.B.G., 2007 UT App 149, ¶ 4, 160 P.3d 9; see also In re C.K., 2000 UT App 11, ¶ 17, 996 P.2d 1059 ("Questions about . . . the legal accuracy of the trial court's statements present issues of law, which we review for correctness. . . ."). To the extent Stepfather challenges the district court's conclusion that the termination of parental rights would not be in Daughter's best interests, we review the decision for an abuse of discretion. See In re A.G., 2001 UT App 87, ¶ 7, 27 P.3d 562.

ANALYSIS
¶ 10 Stepfather challenges the district court's dismissal of the adoption petition on multiple grounds. First, Stepfather contends that the court improperly concluded that the facts could not support a prima facie case for abandonment or unfitness as grounds for termination under Utah Code sections 78-3a-407 and -408, see Utah Code Ann. §§ 78-3a-407, -408 (Supp.2007). Stepfather also argues that the trial court erred when it concluded that Father had presented sufficient evidence to rebut a prima facie case of abandonment or unfitness. Finally, Stepfather contends that the district court erred when it dismissed the adoption petition on the ground that Stepfather had failed to demonstrate that termination of Father's parental rights would be in Daughter's best interests. We do not address Stepfather's first two challenges to the district court's ruling because, even assuming that proper grounds to terminate Father's parental rights existed under section 78-3a-407, Stepfather's failure to provide clear and convincing evidence that it would be in Daughter's best interests to terminate Father's parental rights is a fatal defect to termination and, consequently, to adoption under Utah Code section 78-30-4.16.
¶ 11 Under the Termination of Parental Rights Act (the Act), see Utah Code Ann. §§ 78-3a-401 to -415 (2002 & Supp.2007), "[a]ny interested party . . . may file a petition for termination of the parent-child relationship with regard to a child." Utah Code Ann. § 78-3a-404 (2002). When termination proceedings are initiated under the Act, the court must make two distinct findings supported by clear and convincing evidence before a person's parental rights can be properly terminated. See In re C.K., 2000 UT App 11, ¶ 18, 996 P.2d 1059; see also Utah Code Ann. §§ 78-3a-402(2) (2002), 78-3a-406(3) (Supp.2007). "First, the court must find that a specific ground for termination exists, finding the parent unfit or incompetent based on a ground enumerated in section 78-3a-407 of the Utah Code." In re C.K., 2000 UT App 11, ¶ 18, 996 P.2d 1059; see also In re M.L., 965 P.2d 551, 561 n. 13 (Utah Ct.App.1998). Second, after finding one of the enumerated grounds, "the court must find that termination of parental rights serves the best interests of the child." In re C.K., 2000 UT App 11, ¶ 18, 996 P.2d 1059; see also Utah Code Ann. §§ 78-3a-402(2), -406(3).
¶ 12 Alternatively, termination proceedings may also be initiated within the context of adoption. See Utah Code Ann. § 78-30-4.16 (Supp.2007); In re adoption of B.W.G., 2007 UT App 278, ¶¶ 6-8, 167 P.3d 1099 (noting that termination proceedings may be ancillary to the merits of an adoption petition). When a person whose consent is required for an adoption withholds that consent, section 78-30-4.16 requires the court to "determine whether proper grounds exist for the termination of that person's rights pursuant to the provisions of . . . Title 78, Chapter 3a, Part 4, Termination of Parental Rights Act." Utah Code Ann. § 78-30-4.16(1). "If there are proper grounds to terminate the person's parental rights, the court shall order that the person's rights be terminated." Id. § 78-30-4.16(2)(a).
¶ 13 Stepfather asserts that the framework for determining whether the parent-child relationship should be terminated varies depending on whether the termination proceedings were initiated by petition under the Act or initiated within the context of adoption proceedings. Stepfather concedes that when termination proceedings are initiated by filing a termination petition before *484 the juvenile court under the Act, the two-step analysis is required. However, Stepfather contends that when a termination proceeding arises in the context of a contested adoption before a district court, section 78-30-4.16 limits the analysis to only the first step  whether one of the "proper grounds" enumerated in section 78-3a-407 exists for the termination of that person's parental rights. Under Stepfather's interpretation, a district court, unlike a juvenile court, is not required to inquire whether termination would be in the best interests of the child. Stepfather therefore argues that the district court committed error when it dismissed the adoption petition based on a conclusion that the lack of best interests evidence was a fatal defect to the termination of Father's parental rights. We disagree with Stepfather's contention that section 78-30-4.16 relieves a petitioner from the burden of proving that it would be in the child's best interests to have a person's parental rights terminated.
¶ 14 The plain language of section 78-30-4.16 requires the court to "determine whether proper grounds exist for the termination of [a] person's rights pursuant to the provisions of . . . [the] Termination of Parental Rights Act." Id. § 78-30-4.16(1); see also Foutz v. City of S. Jordan, 2004 UT 75, ¶ 11, 100 P.3d 1171 ("[O]ur primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve." (alteration in original) (internal quotation marks omitted)). By instructing courts to evaluate termination pursuant to the whole of the Act, and not just with respect to certain sections of the Act, we must assume that, even in the adoption context before a district court, the legislature intended that all relevant provisions of the Act would apply when determining whether termination of parental rights is appropriate. See C.T. ex. rel. Taylor v. Johnson, 1999 UT 35, ¶ 9, 977 P.2d 479 ("We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." (internal quotation marks omitted)).
¶ 15 Under the Act, two sections specifically require a court to find that termination would be in the best interests of the child before it can terminate a person's parental rights. Section 78-3a-402 states:
Wherever possible family life should be strengthened and preserved, but if a parent is found, by reason of his conduct or condition, to be unfit or incompetent based upon any of the grounds for termination described in this part, the court shall then consider the welfare and best interest of the child of paramount importance in determining whether termination of parental rights shall be ordered.

Utah Code Ann. § 78-3a-402(2) (emphasis added). Likewise, section 78-3a-406 also mandates that the court weigh the best interests of the child when determining if termination is appropriate. See id. § 78-3a-406(3). Furthermore, Utah courts have long recognized that "[t]he best interest of the child has always been a paramount or `polar star' principle in cases involving termination of parental rights." In re J.P., 648 P.2d 1364, 1368 (Utah 1982). Thus, when "[w]e read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in . . . related chapters," such as the Act, it is apparent that a district court evaluating the termination of parental rights in the context of an adoption proceeding is required to make two distinct findings by clear and convincing evidence: (1) that specific grounds for termination exist; and (2) that termination of parental rights serves the child's best interests. Miller v. Weaver, 2003 UT 12, ¶ 17, 66 P.3d 592. Had the legislature intended to limit the termination of parental rights analysis to only the first step for cases arising in the adoption context, it could have easily done so by incorporating into the language of section 78-30-4.16 a reference to only section 78-3a-407 of the Act. See State v. Wallace, 2006 UT 86, ¶ 12, 150 P.3d 540 (evaluating whether legislature could have effected different intent by choosing different language). The legislature did not do so, instead it incorporated the entire Termination of Parental Rights Act by title, chapter, and part. See Utah Code Ann. § 78-30-4.16(1).
¶ 16 Because the plain language of the Act expressly conveys the legislature's intent that all relevant provisions, including the best interests provisions, of the Act be applied *485 in termination proceedings arising in the framework of contested adoptions, it is not necessary to look to other rules of statutory construction. See State v. Holm, 2006 UT 31, ¶ 16, 137 P.3d 726 ("Only when we find that a statute is ambiguous do we look to other interpretive tools. . . ."), cert. denied, ___ U.S. ___, 127 S.Ct. 1371, 167 L.Ed.2d 159 (2007).
¶ 17 In his appellate brief, Stepfather implicitly conceded that he did not present evidence bearing directly on whether termination of Father's parental rights would be in Daughter's best interests. Because such a finding is necessary before Father's rights can be terminated under the Act, we cannot say that the district court exceeded its discretion when it denied the adoption petition on the ground that Stepfather failed to prove, by clear and convincing evidence, that termination would be in Daughter's best interests.

CONCLUSION
¶ 18 When the issue of termination of parental rights arises within the context of a contested adoption under section 78-30-4.16, the petitioner is not relieved from the burden of proving that the termination of parental rights would be in the child's best interests. Because Stepfather failed to produce clear and convincing evidence that it would be in Daughter's best interests to terminate Father's parental rights, the district court did not exceed its discretion when it refused to terminate Father's rights and, consequently, denied the adoption petition.
¶ 19 Affirmed.
¶ 20 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and GREGORY K. ORME, Judge.
NOTES
[1] Father's prosecutions, which arose out of his actions in taking photographs of a minor, did not involve acts perpetrated on Daughter.
[2] Although the district court's findings of fact indicate that the purpose of the stipulated order was to allow Father to regain visitation with Daughter, it is unclear from the record whether there was any legal impediment to Father's visitation. Nonetheless, it is clear from the record that Father's last contact with Daughter occurred two days before he was arrested in the first criminal prosecution.
[3] It is unclear from the record whether the psychological evaluation provided by Fox satisfied the provision of the divorce court's temporary order requiring that Father be evaluated by a qualified psychiatrist, not a general practitioner.
[4] At the termination hearing, Stepfather presented only two witnesses. First, Detective Daniel Briggs testified that he investigated Father's involvement in one of the cases of sexual exploitation of a minor. Second, Daughter's former psychologist, Christy Hagar, testified that Father did not contact her to discuss the terms of a reunification plan and did not submit the evaluations and reports required by the stipulated temporary order. Father also testified on his own behalf.
[5] Despite concluding that Father's parental rights could not be terminated and, consequently, that the adoption could not proceed, there appears to be nothing in the district court's order that would relieve Father of the obligation of complying with the permanent order entered by the divorce court before exercising visitation with Daughter.