2013 UT App 293

STATE of Utah, in the interest of O.H., a person under eighteen years of age.

C.H., Appellant,

v.

State of Utah, Appellee.

No. 20130914–CA.

Court of Appeals of Utah.

Dec. 12, 2013.

Julie George, Salt Lake City, Attorney for Appellant

Brian L. Tarbet and Carol L.C. Verdoia, Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian ad Litem.

Before Judges GREGORY K. ORME, CAROLYN B. McHUGH, and STEPHEN L. ROTH.

### Decision

PER CURIAM:

¶1 C.H. (Father) appeals the termination of his parental rights. Father challenges the sufficiency of the evidence to support the grounds for termination and the best interests determination, arguing that the juvenile court did not adequately consider the fact that O.H. was not in an adoptive placement at the time of the termination trial. We affirm.

¶2 "[I]n order to overturn the juvenile court's decision [to terminate parental rights], the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶12, 171 P.3d 435 (citation and internal quotation marks omitted). We "review the juvenile court's factual findings based upon the clearly erroneous standard." *In re E.R.*, 2001 UT App 66, ¶11, 21 P.3d 680. A finding of fact is clearly erroneous when, in light of the evidence supporting the finding, it is against the clear weight of the evidence. *See id.* Therefore, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶12, 171 P.3d 435.

¶3 In order to find grounds for termination of parental rights, a juvenile court must conclude that at least one of the grounds enumerated in Utah Code section 78A–6–507 exists. *See* Utah Code Ann. § 78A–6–507 (LexisNexis 2012). The evidence amply supports the juvenile court's conclusions that Father neglected O.H. and was an unfit parent because "he has demonstrated a habitual use of intoxicating substances that have rendered him unable to effectively parent his child in that it has led to his repeated incarceration and an inability to meet the special needs of his child." *See id.* § 78A–6–508(2)(c) (stating that in determining unfitness or neglect, a court shall consider habitual use of controlled substances and drugs that render a parent un-

able to care for the child). The evidence also supports the juvenile court's conclusion that O.H. was being cared for in an out-of-home placement, that Father has substantially neglected, willfully refused or has been unwilling or unable to remedy the circumstances that caused O.H. to be in an out-of-home placement, and that there is a substantial likelihood that Father will not be able to exercise proper and effective parental care in the near future. *See id.* § 78A–6–507(1)(d). In addition, the evidence supports the juvenile court's conclusion that it was in O.H.'s best interests to terminate Father's parental rights so O.H. "can be legally free and adopted by a family where his medical, emotional, and physical needs will be met and where he will be secure, stable, loved and protected from abuse and neglect."

¶4 Father has abused drugs since roughly the age of nineteen, using marijuana, alcohol, methamphetamine, heroin, and ecstasy. Father testified that prior to his incarceration, he used methamphetamine and marijuana daily while caring for O.H. He did not believe that his drug use impacted his ability to parent O.H. In a parenting assessment conducted early in the case, the evaluator noted that Father reported he never had a significant period of abstinence from the use of illegal substances and that Father downplayed the severity of his addictive behavior. The evaluator concluded that without "aggressive rehabilitation" and "a sustained display of non-addictive behavior," Father would not be able to provide for his son's basic, ongoing care. The evaluation also noted Father's lack of stability. While in jail, Father graduated from CATS (Correctional Addiction Treatment Services), which included ninety-three days of treatment. However, Father had not engaged in treatment since his release, and the only evidence of sobriety was his own self-serving testimony. Father had housing with three roommates he had recently met. He testified that he was starting a full-time job on the following Monday, but he could not remember the name of the company. He did not have support from his own family members, from whom he was estranged, but he testified that he would have support from O.H.'s maternal grandpar-

ents, who were previously found by the juvenile court to abuse alcohol and to be inappropriate caretakers for O.H. Based upon the foregoing, the juvenile court's conclusions regarding the grounds for termination of parental neglect are amply supported.

¶ 5 The best interests determination was also adequately supported. O.H. has severe cerebral palsy and requires structured supervision and therapeutic interventions by his caregivers. Father testified that he was the primary caregiver for O.H. up to the week before O.H. came into the custody of the Division of Child and Family Services (DCFS). When O.H. came into foster care, he had trouble swallowing foods with any texture. His muscles were rigid, he had no muscle strength, and he tired easily. He had difficulty rolling over, did not talk or babble, and rarely made eye contact. Father did not dispute O.H.'s condition when he came into foster care, but he implausibly testified that O.H.'s condition deteriorated in the week between his incarceration and O.H. coming into DCFS custody. Since being in foster care, O.H. has received physical, occupational, and speech therapy. He uses a wheelchair and a walker, eats table food, attends preschool, and interacts with others. The foster mother testified about the care and adaptive devices that O.H. will require, including one to two hours per day for exercises in addition to his appointments. The juvenile court found that O.H. will require a caregiver who is patient, consistent, stable, and able to provide a structured environment. The juvenile court found that despite Father's love for and bond with O.H., Father could not provide the necessary consistency, stability, and structure for O.H. at the time of trial and it was "unlikely, based upon his recent history, that he would be in a position to do so in the near future." Although the juvenile court specifically found that O.H. was not in a prospective adoptive placement, the court found that he was an adoptable child and that DCFS was making efforts to locate an adoptive home where his special needs could continue to be met.

¶ 6 Father claims that the juvenile court failed to adequately consider the fact that O.H. was not in a prospective adoptive placement. The record demonstrates otherwise. The foster mother testified that she had concluded that she was unable to adopt O.H., and the availability of a prospective adoptive home is a relevant factor in determining whether termination would be in a child's best interests. *See In re J.D.*, 2011 UT App 184, ¶ 23, 257 P.3d 1062 (stating that lack of an adoptive placement "was not controlling with regard to the Children's best interest," but it was a factor to be considered). Father argued to the court that he should be allowed additional time and reunification services while O.H. remained in foster care and was on an adoption exchange, after which the court could reevaluate the case. The State argued that Father's proposal would impede the State in locating a prospective foster home and seeking funding for the services that would be needed to care for O.H. The record reflects that the juvenile court considered the positions of both the State and Father in reaching its decision. Father's contention that the juvenile court did not adequately consider the factor that O.H. was not in a prospective adoptive home is without merit. Father simply disagrees with the weight that the juvenile court gave to this factor in arriving at the ultimate decision.

¶ 7 The record amply supports the juvenile court's findings of grounds for termination and the best interests determination. Father presented no evidence of his sobriety other than his own self-serving testimony. In sum, he testified in conclusory terms that he would do all that was necessary to care for O.H. without an adequate demonstration of his ability to do so. The totality of the evidence supports the juvenile court's conclusion that Father has not demonstrated that he will be able to provide appropriate, stable, and consistent care for O.H. in the near future. Because "a foundation for the court's decision exists in the evidence," we affirm the juvenile court's decision terminating parental rights. *See In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435.