104 P.3d 662 (2004)
2004 UT App 451
STATE of Utah, in the interest of W.P.O. and E.P.O., persons under eighteen years of age.
D.P.A., Appellant,
v.
State of Utah, Appellee.
No. 20040111-CA.
Court of Appeals of Utah.
December 2, 2004.
Gary L. Bell, South Jordan, for Appellant.
Mark L. Shurtleff, Atty. Gen., and John M. Peterson, Asst. Atty. Gen., Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before BENCH, Associate P.J., DAVIS, and GREENWOOD, JJ.

OPINION
BENCH, Associate Presiding Judge:
¶ 1 D.P.A. appeals the juvenile court's order terminating his parental rights. We affirm.

BACKGROUND
¶ 2 On June 11, 2002, D.P.A. drove his vehicle in a reckless manner, causing the vehicle to overturn. D.P.A.'s pregnant wife, who was a passenger in the vehicle, and her unborn child were killed as a result of the rollover. D.P.A.'s minor children, W.P.O. and E.P.O., were also passengers in the vehicle and were seriously injured after being ejected from the vehicle during the rollover. As a result of the rollover, D.P.A. was convicted of automobile homicide, driving under the influence of alcohol, child abuse and neglect, and an open container violation.
¶ 3 Following a shelter hearing, the Division of Child and Family Services DCFS made a failed attempt to place the children with a maternal uncle in California. This placement fell through after the uncle was arrested for driving under the influence of alcohol. DCFS then placed the children with Utah foster parents.
¶ 4 On several occasions, D.P.A. expressed to the juvenile court his desire that his mother in Mexico be considered as a kinship *663 placement. Although D.P.A.'s mother sent a belated letter to the State indicating her willingness to take custody of the children, the mother never petitioned the juvenile court for custody.
¶ 5 The State filed a petition for termination of D.P.A.'s parental rights. After the termination trial, the juvenile court ordered the termination of D.P.A.'s parental rights and awarded custody of the children to DCFS, pending their adoption by foster parents. D.P.A. now appeals the termination order.

ISSUES AND STANDARDS OF REVIEW
¶ 6 D.P.A. argues that the juvenile court erred in terminating his parental rights because the State failed to adequately consider his mother as a possible kinship placement under Utah Code section 78-3a-307. See Utah Code Ann. § 78-3a-307(5)(a) (2002). In addition, D.P.A. contends that termination was erroneously granted because the juvenile court lacked jurisdiction under the federal Immigration and Nationality Act. See 8 U.S.C. § 1101(a)(27)(j) (2004).
¶ 7 Determination of these issues is a matter of statutory interpretation, "which presents a `question[ ] of law [that] we review for correctness, according no particular deference to the [juvenile] court's interpretation.'" In re S.Y., 2003 UT App 66, ¶ 10, 66 P.3d 601 (first and final alterations in original) (quoting State v. Coleman, 2001 UT App 281, ¶ 5, 34 P.3d 790).

ANALYSIS

I. Utah Code section 78-3a-307(5)(a)
¶ 8 D.P.A. contends that the juvenile court could not terminate his parental rights without first considering his mother as a possible kinship placement under Utah Code section 78-3a-307(5)(a). See Utah Code Ann. § 78-3a-307(5)(a) (2002). This statute requires the juvenile court, at the time of a shelter hearing, to "determine whether there is a relative who is able and willing to care for the child." Id.
¶ 9 However, following the mandate of section 78-3a-307(5)(a) is not a prerequisite to terminating parental rights. The termination of parental rights is governed by the Termination of Parental Rights Act (the Act). See id. §§ 78-3a-401 to -415 (2002). Under the Act, the decision to terminate parental rights hinges on whether the parent is "unfit or incompetent" and whether termination is in the "best interest of the child." Id. § 78-3a-402.
¶ 10 D.P.A. argues that the juvenile court could not decide whether termination was in the best interest of the children without first evaluating a possible kinship placement with D.P.A.'s mother. However, nothing in the plain language of the Act requires a juvenile court to consider possible kinship placements when deciding whether termination is in the best interest of the child.
¶ 11 The juvenile court properly applied Utah law with regard to the termination of D.P.A.'s parental rights. The juvenile court's alleged failure to comply with section 78-3a-307(5)(a) has no bearing on the propriety of the termination order.[1] Because D.P.A.'s parental rights were properly terminated, he has no residual legal interest in issues pertaining to the children's custody.

II. Federal Immigration Law
¶ 12 D.P.A. contends that federal immigration law precluded the juvenile court from terminating his parental rights to W.P.O., who is a citizen of Mexico. D.P.A. argues that the juvenile court lacked jurisdiction to terminate parental rights because W.P.O. was not granted "special immigrant" status under federal immigration law. 8 U.S.C. § 1101(a)(27)(j) (2004). However, D.P.A. points to no statutory language that prevents the juvenile court from terminating parental rights in a child who is not accorded special immigrant status. Nor does the federal statute prevent the juvenile court from making custody determinations concerning a noncitizen juvenile who does not have special immigrant status. See id. In short, D.P.A. *664 cites no authority that would preclude the juvenile court from taking jurisdiction over this matter.

CONCLUSION
¶ 13 For the foregoing reasons, the juvenile court's order terminating the parental rights of D.P.A. is affirmed.
¶ 14 WE CONCUR: JAMES Z. DAVIS and PAMELA T. GREENWOOD, Judges.
NOTES
[1] Because we conclude that Utah Code section 78-3a-307(5)(a) has no bearing on the termination of parental rights, we do not consider whether the juvenile court adequately evaluated D.P.A.'s mother as a possible kinship placement. See Utah Code Ann. 78-3a-307(5)(a) (2002).