262 P.3d 46 (2011)
2011 UT App 215
STATE of Utah, in the interest of B.O., a person under eighteen years of age.
J.C., Appellant,
v.
State of Utah, Appellee.
No. 20110281-CA.
Court of Appeals of Utah.
June 30, 2011.
*48 F. LaVar Christensen, Draper; and Steve S. Christensen, Lisa B. Thornton, and Samuel J. Sorensen, Salt Lake City, for Appellant.
Mark L. Shurtleff and John M. Peterson, Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before Judges DAVIS, McHUGH, and CHRISTIANSEN.

DECISION
PER CURIAM:
¶ 1 J.C. (Mother) appeals the termination of her parental rights. We affirm.
¶ 2 A juvenile court may terminate parental rights if the court finds that a parent has either abandoned a child, neglected a child, or is an unfit or incompetent parent. See Utah Code Ann. § 78A-6-507(1) (2008). Pursuant to section 78A-6-507(1), a finding of any one of these grounds is alone sufficient to warrant the termination of parental rights. See id. § 78A-6-507(1); see also In re F.C. III, 2003 UT App 397, ¶ 6, 81 P.3d 790. In considering an appeal from an order terminating parental rights, the Utah Supreme Court has determined that an appellate court should not substitute its own judgment for that of the juvenile court's judgment in matters relating to termination proceedings. See In re B.R., 2007 UT 82, ¶¶ 12-15, 171 P.3d 435. The supreme court concluded that the juvenile court is in the best position to weigh conflicting testimony, to assess witness credibility, and from such determinations, to render findings of fact. See In re L.M., 2001 UT App 314, ¶¶ 10-12, 37 P.3d 1188. A juvenile court's findings cannot be overturned unless they are clearly erroneous. See In re A.G., 2001 UT App 87, ¶ 7, 27 P.3d 562. A finding is clearly erroneous only when, in light of the evidence supporting the finding, it is against the clear weight of the evidence. See id.
¶ 3 Mother first asserts that the juvenile court erred by denying Mother the opportunity to present additional evidence regarding her compliance with services during a February 2, 2011 hearing. A court's *49 decision to take additional evidence after a matter has been submitted to the court, but prior to the entry of judgment, is reviewed for an abuse of discretion. See State v. Jackson, 2010 UT App 328, ¶ 11, 243 P.3d 902.
¶ 4 Approximately one week following the conclusion of Mother's parental rights termination trial, but prior to the entry of the order terminating Mother's parental rights, Mother was shot through the lower neck by C.O., a man with whom Mother had a relationship. The State moved to submit newly discovered rebuttal evidence obtained during the investigation of the shooting. During this investigation, drug paraphernalia was found in Mother's apartment, and there was testimony that Mother admitted to using heroin.
¶ 5 The juvenile court limited the scope of the February 2, 2011 hearing to rebuttal evidence as to matters including Mother's testimony that she: (1) no longer associated with C.O.; (2) did not know C.O. was using illegal drugs; (3) did not know that there was drug paraphernalia in her home; (4) was not aware that C.O. had a restricted firearm; and (5) was not abusing illegal substances. The juvenile court clarified that the February 2, 2011 hearing was not an invitation for both parties to reopen the scope of the entire case, as both parties had been given ample opportunities to present all relevant evidence during the termination trial. Mother fails to demonstrate that the juvenile court abused its discretion by limiting the scope of the February 2, 2011 hearing.
¶ 6 Mother next asserts that the juvenile court erred by failing to reinstate reunification services. Utah Code section 78A-6-314(7) provides that there is no right to reunification services. See Utah Code Ann. § 78A-6-314(7). Reunification services are a gratuity provided by the Legislature, and the Legislature has granted the juvenile court discretion as to whether reunification services should be provided. See In re N.R., 967 P.2d 951, 956 (Utah Ct.App.1998). There is sufficient evidence to support the juvenile court's findings that Mother resisted services and that she had minimal success with such services. Within weeks of her commitment to reinvest in her service plan, Mother missed drug and alcohol tests and again failed to follow through with services. Given the record, the juvenile court did not abuse its discretion in declining to reinstate reunification services.
¶ 7 Mother next asserts that the juvenile court erred in concluding that Mother habitually used controlled substances, rendering her unable to care for B.O., and that the court erred in finding that Mother failed to remedy her drug use. Mother admitted to marijuana use, and missed drugs tests. Furthermore, days after the termination trial, Mother admitted to using heroin. While the juvenile court conceded that some of Mother's test results had been negative for illegal drugs, the court found that the weight of the evidence supported a finding that Mother had a drug problem, which she had failed to remedy. Based upon the record, we cannot say that the juvenile court's determination was against the clear weight of the evidence.
¶ 8 Mother next asserts that the juvenile court erred by terminating Mother's parental rights for failing to comply with the terms of the Child and Family Plan, and that the juvenile court erred by failing to consider Mother's level of compliance with the plan. A juvenile court "may not terminate the parental rights of a parent because the parent has failed to complete the requirements of a child and family plan." Utah Code Ann. § 78A-6-507(2). However, the failure to comply with the terms of the Child and Family Plan may be used as evidence of a failure of parental adjustment. See id. § 78A-6-508(5).
¶ 9 Mother was ordered to complete the goals of the Child and Family Plan. However, there was sufficient evidence that Mother repeatedly failed to follow through with services being provided. The juvenile court found that Mother demonstrated little motivation or ability to correct the issues that required B.O.'s removal. The juvenile court did not err by considering Mother's level of compliance with her services. See id.
¶ 10 Mother next asserts that the juvenile court erred by failing to place B.O. in *50 his grandparents' care. This court has previously determined that "nothing in the plain language of [Termination of Parental Rights Act] requires a juvenile court to consider possible kinship placements when deciding whether termination is in the best interests of the child." In re W.P.O., 2004 UT App 451, ¶ 10, 104 P.3d 662. While such kinship placements are relevant during the shelter hearing, they are not directly relevant to termination proceedings. See id. ¶ 11. Alternatively, Mother asserts that the juvenile court erred by failing to consider Mother's fundamental liberty interest in the care, custody, and management of B.O.
¶ 11 Although the parent-child relationship is protected, the termination of parental rights does not violate those protections so long as there is clear and convincing evidence both that the parent is unfit and that it is in the child's best interests to terminate the parent's rights. See In re K.S., 737 P.2d 170, 172 (Utah 1987).
¶ 12 Finally, Mother asserts that the juvenile court erred by determining that it was in B.O.'s best interests to terminate Mother's parental rights. If there are sufficient grounds to terminate parental rights, in order to actually do so, "the court must [next] find that the best interests and welfare of the child are served by terminating the parents' parental rights." In re R.A.J., 1999 UT App 329, ¶ 7, 991 P.2d 1118. The determination of whether the termination of parental rights is in the best interest of the child is reviewed for an abuse of discretion. See In re A.G., 2001 UT App 87, ¶ 7, 27 P.3d 562.
¶ 13 In considering the best interests of the child, the juvenile court shall consider the physical, mental, and emotional needs of the child. See In re J.D., 2011 UT App 184, ¶¶ 14-16, 257 P.3d 1062. The court should also consider the effort a parent has made in order to have the child returned. See id. The juvenile court found that Mother struggled to maintain stable employment; had minimal success with services; had failed to establish that she was capable of providing stable, suitable housing for B.O.; and that she had little motivation or ability to correct the issues that gave rise to B.O.'s removal. The juvenile court also found that if B.O. were returned to Mother's care, she would continue to put her own desires above B.O.'s needs. In weighing the evidence, the juvenile court ultimately determined that Mother would not be able to provide emotional or physical stability for B.O.
¶ 14 The juvenile court also found that B.O. was residing with D.O., a relative, who loves B.O. and was interested in adopting him if she had the opportunity to do so. B.O. is happy and well taken care of living with D.O., where his physical, cognitive, and emotional needs are being met. There is evidence that a parent/child bond has developed between B.O. and D.O. Given the record, we cannot say that the juvenile court's determination that it is in B.O.'s best interest to terminate Mother's parental rights is against the clear weight of the evidence.
¶ 15 Accordingly, the juvenile court's order terminating Mother's parental rights is affirmed.