IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, in the interest of F.B. and I.B., persons under eighteen years of age. | ) ) ) ) ) | PER CURIAM DECISION |
| _____ | ) | Case No. 20111005-CA |
| M.C., | ) ) | F I L E D |
| Appellant, | ) ) | (February 9, 2012) |
| v. | ) ) | 2012 UT App 36 |
| State of Utah, | ) ) | |
| Appellee. | ) | |

-----

Second District Juvenile, Ogden Department, 175039
The Honorable Janice L. Frost

Attorneys:     Ryan J. Bushell, Ogden, for Appellant
                    Mark L. Shurtleff and John M. Peterson, Salt Lake City, for Appellee
                    Martha Pierce, Salt Lake City, Guardian ad Litem

-----

Before Judges McHugh, Davis, and Roth.

¶1     M.C. (Mother) appeals the termination of her parental rights to F.B. and I.B. On appeal, Mother challenges only the best interest determination. Mother contends that the juvenile court "wholly failed to make any record or take into account that it would be in the children's best interests if there was some continued contact with their mother."

¶2　"In order to terminate parental rights, the juvenile court must make two separate findings. First, it must find grounds for termination under Utah Code section 78A-6-507. . . . Second, the juvenile court must find that termination of the parent's rights is in the best interests of the child." *In re A.C.M.*, 2009 UT 30, ¶ 23, 221 P.3d 185; *see also In re J.D.*, 2011 UT App 184, ¶ 10, 257 P.3d 1062; Utah Code Ann. §§ 78A-6-503(2), -506(3) (2008). Both findings must be supported by clear and convincing evidence. *See* Utah Code Ann. § 78A-6-506(3). "Whether a parent's rights should be terminated presents a mixed question of law and fact." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. "Because of the factually intense nature of such an inquiry, the juvenile court's decision should be afforded a high degree of deference." *Id.* "Thus, in order to overturn the juvenile court's decision "[t]he result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made.'" *Id.*(citation omitted). "When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.*

¶3　Mother does not challenge the sufficiency of the evidence to support the grounds for termination, which were that Mother is unfit under Utah Code section 78A-6-508(2)(c), due to the habitual or excessive use of drugs that rendered her unable to care for the children, and is also unfit under Utah Code section 78A-6-508(2)(d), due to repeated failure to provide adequate care for the children. *See id.* § 78A-6-508(2)(c)-(d) (Supp. 2011). The juvenile court found by clear and convincing evidence that it was in the children's best interest to terminate mother's parental rights, after applying the specific considerations required by Utah Code section 78A-6-510 and finding that the children have resided with the foster parents in excess of six months and have become integrated into their family and that both children expressed their desire to be adopted and live permanently with the foster parents. *See generally id.* § 78A-6-510 (2008). Section 78A-6-510 sets forth specific considerations for the juvenile court "[i]f a child is in the custody of the [Division of Child and Family Services] and has been placed and resides in a foster home and the division institutes proceedings . . . regarding the child, with the ultimate goal of having the child's foster . . . parents adopt him." *Id.* The juvenile court further found that the foster parents have ensured that the children attend school, have had the children continuously in counseling, and have responded appropriately to the emotional and mental health problems exhibited by the children. The court noted the testimony of F.B.'s therapist that he needs to have Mother's rights

terminated in order to move forward in resolving his anger. The juvenile court found that F.B. suffers from serious anxiety that will likely not begin to resolve until there is permanency in his life. The court found that I.B.'s strongest bonds are to F.B. and his foster father, whom he sees as his father and is reliant upon for emotional stability.

¶4    Contrary to Mother's claim, the juvenile court made specific findings regarding continued contact with Mother. It found that F.B.'s therapist changed her opinion during the case regarding continued contact with Mother and supported termination of parental rights, and also found that F.B. needed resolution to the case and had expressed a wish to be adopted. The juvenile court found that although F.B. enjoys visits with his mother, he wanted to be adopted by the foster parents and to live with them. Similarly, the juvenile court found that I.B. would like to be adopted, but he would like to have visits with Mother. On the subject of continued contact, the juvenile court specifically found,

> Although continued contact with the mother may be appropriate at some level, it is not in the children's best interest to live with their mother. It is also contrary to their best interest to continue in foster care without being afforded the opportunity for permanency. [F.B.] particularly needs resolution in order to move forward.

¶5    Before terminating parental rights, a court must conduct a two-part analysis, first finding grounds for termination and then determining whether termination of parental rights is in the child's best interest. *See In re J.D.*, 2011 UT App 184, ¶ 10, 257 P.3d 1062. However, "evidence of unfitness may be probative of both factors of the termination analysis." *Id.* ¶ 12. In *In re J.D.*, we affirmed the juvenile court's decision that although no adoptive home had been identified in that case, it was in their best interest to terminate parental rights to allow them an opportunity to be placed in a permanent home. *See id*. ¶ 29-30.

¶6    The best interests determination in this case was based upon careful consideration of extensive evidence about the best interests of the children. First, a prospective adoptive home is available and both boys--eight and seven years of age at the time of trial--have expressed a wish to be adopted. Mother argues that both therapists recommended continued contact and that the juvenile court "wholly failed"

to consider this evidence. Both the transcript of the termination trial and the court's findings demonstrate that this assertion is without merit. Furthermore, the testimony of the therapists was more nuanced than Mother suggests. F.B.'s therapist testified that contact between Mother and F.B. would prevent him from moving forward and was not in his "therapeutic best interests." His therapist testified that it was in F.B.'s best interests to first work through his mental health issues without contact with Mother and that any subsequent contact should be in a therapeutic setting. F.B.'s therapist testified that if F.B. is able "to process the information in an appropriate time frame, contact [with Mother] could occur in a therapeutic session." I.B. required the stability and consistency provided by his foster home and was particularly bonded to his foster father. Both therapists testified that termination of parental rights to allow the children to be adopted by the foster family would be in their best interests. The parties framed the issues regarding continued contact for consideration by the juvenile court, and the court specifically found that, while continued contact with Mother may be appropriate "at some level," it was not in their best interest "to continue in foster care without being afforded the opportunity for permanency." By stipulation, the juvenile court also interviewed the children in camera and summarized the interview by stating "that their expressed wishes seemed quite clear that they want to continue to live with [the foster parents] but they feel very strongly that they want to continue to have contact with [Mother] particularly, [step-father], and the [half-siblings]." The claim that the juvenile court did not fully consider evidence regarding continued contact or make an adequate record is meritless.

¶7 The evidence was sufficient to support the juvenile court's best interest determination. The juvenile court considered testimony from the children's therapists that it was in the children's best interests that Mother's rights be terminated to allow them to be adopted. The children are in a stable prospective adoptive home where their needs, including their therapeutic and educational needs, are being met. They both desire to be adopted. The foster parents testified that they are willing to maintain contact with the children's half-siblings and with Mother if she remains drug-free, while acknowledging that only they would have parental rights. Both therapists

recommended that future contact with Mother should be based upon the children's therapeutic needs. Because there is a foundation for the juvenile court's best interests determination in the record, we affirm the decision of the juvenile court.

_____
Carolyn B. McHugh,
Presiding Judge

_____
James Z. Davis, Judge

_____
Stephen L. Roth, Judge