2003 UT App 51

**STATE of Utah, in the interest of B.M.S., a person under eighteen years of age.**

**B.J.B., Appellant,**

v.

**H.J., Appellee.**

No. 20020138–CA.

Court of Appeals of Utah.

Feb. 21, 2003.

Lamar J. Winward, St. George, for Appellant.

Mark L. Shurtleff and Sandra Langley, Asst. Attys. Gen., Salt Lake City, for Amicus Curiae Office of Recovery Services.

Before JACKSON, P.J., BILLINGS, Associate P.J., and BENCH, J.

OPINION

JACKSON, Presiding Judge:

¶ 1 B.J.B. appeals the juvenile court's denial of his motion to enter default judgment and petition to terminate his parental rights. We affirm.

BACKGROUND

¶ 2 On or about June 18, 1996, B.J.B. executed an Affidavit for Voluntary Declaration of Paternity. Based on his affidavit, the State filed a complaint for paternity. The juvenile court entered a judgment of paternity on October 27, 1999, and set child support at $342 per month on March 16, 2000. On May 16, 2000, B.J.B. filed a motion to stay collection of child support, to set aside judgment of paternity, and to dismiss. The juvenile court denied each of his motions on December 21, 2000, and B.J.B. did not appeal.

¶ 3 In February 2001, B.J.B. filed a petition for termination of parental rights in the Fifth District Juvenile Court seeking to relinquish his parental rights. In September 2001, the natural mother, H.J., filed an unsigned response without revealing her whereabouts. When she did not appear at trial, the juvenile court issued an order requiring her to sign her response and provide her address and telephone number. The order provided that the juvenile court would strike her response and enter a default judgment in favor of B.J.B. if she did not comply with its order. She did not comply with the order.

¶ 4 Nevertheless, the juvenile court denied B.J.B.'s motion for default judgment and dismissed his petition to terminate parental rights on the grounds that he sought relief under the wrong statute. Specifically, the juvenile court determined he was not entitled to terminate his parental rights under section 78-3a-404 of the Termination of Parental Rights Act (the Act), and termination was not in the child's best interests. See Utah Code Ann. § 78-3a-404 (2002). Both parties have stipulated that B.J.B. is not the biological father of the child. B.J.B. now challenges the juvenile court's interpretation of section 78-3a-404 and its refusal to terminate his parental rights.[1]

---

1. B.J.B. also argues that the juvenile court erred in refusing to enter H.J.'s default. We do not consider this argument in depth, however, because the policy considerations and precedent on which the juvenile court based its decision are well within its discretion. See Crookston v. Fire Ins. Exch., 860 P.2d 937, 938 (Utah 1993) (stating that there is no abuse of discretion unless

ISSUES AND STANDARDS OF REVIEW

■ ¶ 5 First, B.J.B. argues the juvenile court improperly interpreted section 78–3a–404 of the Act. *See* Utah Code Ann. § 78–3a–404 (2002). A question of statutory interpretation is a legal conclusion to be reviewed for correctness. *See State v. McKinnon*, 2002 UT App 214, ¶ 3, 51 P.3d 729.

■ ¶ 6 Second, B.J.B. argues the juvenile court erred in refusing to terminate his parental rights. To terminate parental rights, a juvenile court must determine it is in the child's best interests. *See In re A.G.*, 2001 UT App 87, ¶ 7, 27 P.3d 562. " 'We will disturb the juvenile court's decision not to terminate parental rights only if its findings are clearly erroneous.' " *In re C.K.*, 2000 UT App 11, ¶ 17, 996 P.2d 1059 (citation omitted). Moreover, we defer to the juvenile court in its findings of fact because of its advantageous position in assessing credibility. *See id.* at ¶¶ 14–15.

## ANALYSIS

I. Interpretation of Utah Code Ann. § 78–3a–404 (2002)

¶ 7 B.J.B. argues the juvenile court erred when it refused to terminate his parental rights pursuant to section 78–3a–404 of the Act. B.J.B. points to language in section 78–3a–404 that allows "any interested party" to file a petition to terminate parental rights. The juvenile court acknowledged the "any interested party" language, but posited that the phrase does not mean every interested party. Instead, the juvenile court concluded, it means "any interested party except the parent whose actions give rise to the termination."

■ ¶ 8 "[W]hen interpreting statutes, our primary goal is to evince 'the true intent and purpose of the Legislature.' " *State v. McKinnon*, 2002 UT App 214, ¶ 6, 51 P.3d 729 (citation omitted). In doing so, we first look to the plain language of the statute. *See id.* "Moreover, '[w]e do not look beyond the statute's plain language unless it is ambiguous.' " *Id.* (alteration in original) (citation omitted).

¶ 9 The Act provides the judicial processes to be applied when a parent seeks to relinquish his own parental rights and when third parties seek to terminate the rights of one or both parents. The Act, therefore, is divided into two distinct processes. This is the clear legislative intent of the Act as summarized in section 78–3a–402(1), which states, "[t]his part provides a judicial process for voluntary and involuntary severance of the parent-child relationship, designed to safeguard the rights and interests of all parties concerned and promote their welfare and that of the state."

¶ 10 The one process, section 78–3a–414, "Voluntary relinquishment—irrevocable," describes what must be done when a parent seeks to relinquish his own parental rights. When the process is initiated by a third party, however, involuntary termination proceedings apply and are governed by the remaining sections of the Act. Thus, each petition to the court to sever the parent-child relationship must fall into one of these two processes. Either a parent seeks to relinquish his own parental rights or the action is brought by a third party.

¶ 11 When a parent seeks to voluntarily relinquish his parental rights, he must use the statute specifically intended for such an action. To do otherwise would defeat the legislative intent contained in subsection 78–3a–414(5), which states: "The requirements and processes described in Sections 78–3a–402 through 78–3a–410 do not apply to a voluntary relinquishment or consent for termination of parental rights. The court need only find that the relinquishment or termination is in the child's best interest."

■ ¶ 12 B.J.B. sought to convince the juvenile court that he could apply section 78–3a–404(1) to his attempt to voluntarily relinquish his parental rights. By clear and unambiguous statutory language, however, the requirements and processes of sections 78–3a–402 through 78–3a–410, of which 78–3a–404 is part, do not apply when the matter pending before the court involves a parent who wishes to voluntarily relinquish his parental rights.

there is "no reasonable basis" for the trial   court's decision).

¶ 13 Moreover, allowing a parent to terminate his own parental rights under section 78–3a–404 would produce an absurd result. It would allow a parent to use his own misconduct, such as abandonment and neglect, to further alleviate his parental obligations. *Commodum ex injuria sua nemo habere debet.*[2] Further, it would render the presumption in section 78–3a–414, "Voluntary relinquishment—irrevocable," meaningless. Section 78–3a–414 requires a parent seeking to relinquish his parental rights to overcome the presumption that termination for the sole purpose of avoiding financial responsibility is *not* in the best interests of the child.[3] Conversely, termination of parental rights by a third party requires only a showing that termination of parental rights is in the child's best interests, without any presumption. *See* Utah Code Ann. § 78–3a–402. Therefore, parents seeking voluntary relinquishment of parental rights would have an incentive to pursue termination under section 78–3a–404 rather than bearing the heavier burden of rebutting the presumption contained in section 78–3a–414. "[W]e seek 'to render all parts [of the statute] relevant and meaningful' " and to " 'avoid interpretations that will render portions of a statute superfluous or inoperative.' " *State v. Tooele County*, 2002 UT 8,¶ 10, 44 P.3d 680 (citations omitted).

¶ 14 Accordingly, we hold that the juvenile court was correct in concluding that B.J.B. may not terminate his parental rights under section 78–3a–404. First, the plain language of subsection 78–3a–414(5) expressly prohibits use of this section when a parent seeks to voluntarily relinquish his parental rights. Second, a contrary interpretation would lead to an absurd result because it would allow parents to profit from their own wrongdoing. Third, such an interpretation would render the presumption contained in section 78–3a–414 meaningless.

## II. Refusal to Terminate Parental Rights

¶ 15 In any event, the juvenile court properly refused to terminate B.J.B.'s parental rights because it determined that termination was not in the child's best interests. Utah law requires juvenile courts to make two distinct findings before terminating the parent-child relationship. *See In re C.K.*, 2000 UT App 11,¶ 18, 996 P.2d 1059. First, the court must find a specific ground for termination, as required by section 78–3a–407. *See id.* Second, the court must find that termination is in the child's best interests. *See id.* The petitioner bears "the burden of establishing both of these elements by clear and convincing evidence." *In re R.A.J.*, 1999 UT App 329,¶ 7, 991 P.2d 1118.

¶ 16 Section 78–3a–407 allows a juvenile court to terminate parental rights if it finds that the parent has abandoned or neglected the child. B.J.B.'s actions fall into the categories of abandonment and neglect since he has not made any efforts to visit, communicate, or support his child other than those forced by the State. *See In re M.E.C.*, 942 P.2d 955, 960 (Utah Ct.App.1997) (upholding termination of parental rights for neglect where parent made only token efforts to communicate with and support child); *In re B.O.*, 927 P.2d 202, 203–04 (Utah Ct.App. 1996) (upholding termination of parental rights for abandonment where parent visited child twice in eleven years, called or mailed a card every four to six months, and was at least two years in arrears on child support payments). Thus, if § 78–3a–407 applied, B.J.B. would have satisfied the first prong of the test.

¶ 17 The second prong requires B.J.B. to show that termination of parental rights is in the child's best interests. B.J.B. argues that it would be in the child's best interests to sever the "artificial tie" that binds them together because he does not have any contact

---

**2.** No person ought to have advantage from his own wrong.

**3.** "There is a presumption that voluntary relinquishment or consent for termination of parental rights is not in the child's best interest where it appears to the court that the primary purpose is

to avoid a financial support obligation. The presumption may be rebutted, however, if the court finds the relinquishment or consent to termination of parental rights will facilitate the establishment of stability and permanency for the child." Utah Code Ann. § 78–3a–414(6) (2002).

with the child, and he is not the child's biological father.

¶ 18 Utah courts have declined to terminate parental rights, even after finding parental misconduct, where it is not in the child's best interests. *See, e.g., In re R.A.J.*, 1999 UT App 329 at ¶¶ 14–15, 991 P.2d 1118 (upholding denial of foster parents' petition to terminate parental rights); *In re E.R.*, 2001 UT App 66, ¶¶ 12–13, 21 P.3d 680 (affirming juvenile court's refusal to terminate parental rights even though grounds existed to terminate because best interests of children would not be served by leaving children without support).

¶ 19 *In re E.R.* is instructive. In that case, a guardian ad litem filed a petition to terminate parental rights. *See id.* at ¶ 4. The juvenile court found sufficient grounds to terminate the parents' rights but refused to do so because it was not in the children's best interests. *See id.* The appellate court affirmed: "It is conceivable that grounds for termination may exist, but termination nonetheless is not in the best interest of the children. For example, the children lose certain rights when termination occurs, such as support from their parents." *Id.* at ¶ 13.

¶ 20 The juvenile court applied the same reasoning to B.J.B. It recognized B.J.B.'s parental misconduct, but it declined to terminate his parental rights because termination would end all B.J.B.'s support obligations to his legal child. Accordingly, the juvenile court did not commit clear error in refusing to terminate B.J.B.'s parental rights.[4]

## CONCLUSION

¶ 21 We conclude that the juvenile court did not commit reversible error in denying B.J.B.'s motions. Section 78–3a–404 does not apply to voluntary petitions to terminate

parental rights. In any event, the juvenile court did not commit clear error in determining that termination was not in the best interests of the child. Accordingly, we affirm.

¶ 22 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and RUSSELL W. BENCH, Judge.

---

**4.** While we recognize some inequity in requiring non-biological fathers to support their children, we cannot reverse on these grounds. Our legislature has made provision for those who have signed a voluntary declaration of paternity to rescind their acknowledgment pursuant to Utah Code Ann. § 78–45e–4 (2002). First, it may be rescinded within the earlier of sixty days of signing or the date of an official proceeding regarding the child. Thereafter, the declaration may be challenged on the grounds of fraud, duress, or

material mistake of fact. B.J.B. made a section 78–45e–4 argument in a previous proceeding, but he elected not to appeal the trial court's adverse ruling. Accordingly, the trial court's ruling became the law of the case. *See Thurston v. Box Elder County*, 892 P.2d 1034, 1037 (Utah 1995) (stating that "[t]he 'law of the case' is a legal doctrine under which a decision made on an issue during one stage of a case is binding in successive stages of the same litigation").