*374 Opinion
BENCH, Senior Judge:
T1 R.O. (Stepmother) appeals the district court's order denying her petition to terminate the parental rights of M.M. (Mother) and dismissing Stepmother's petition for the adoption of A.M.O. (Child). Stepmother argues that the district court's findings of fact are insufficiently detailed. We agree and reverse and remand.
BACKGROUND
12 Stepmother is married to Child's biological father (Father). Since 2008, Mother, who is Child's biological mother, and Father have shared legal custody of Child, but Father has retained physical custody of Child. Mother has a history of substance abuse, and in November 2010, she was arrested and incarcerated for drug-related offenses.
{3 In May 2011, Stepmother filed a petition for adoption, in which she sought to terminate Mother's parental rights and to become Child's adoptive parent. On May 18, 2011, Mother was served with notice of the adoption proceeding. The notice informed Mother that she had thirty days to file a response if she intended to intervene in or contest the adoption. Mother's pro se Motion to Extend Time for Answer was filed in district court on June 20, 2011.[2] Shortly thereafter, Stepmother moved to strike Mother's motion to extend for noncompliance with section 78B-6-110 of the Utah Adoption Act. See Utah Code Ann. § 78B-6-110(6) (LexisNexis Supp.2013)[3] The district court denied Stepmother's motion to strike and informed Mother that she had ten days to file an answer. Mother filed a motion to intervene within those ten days and then filed an answer the following week.
14 The district court held evidentiary hearings in 2012 and announced its findings of fact and rulings from the bench. In evaluating a petition to terminate parental rights, the court engages in a two-step analysis. The first step requires the court to determine whether the petitioner demonstrated grounds to terminate parental rights. In re Adoption of T.H., 2007 UT App 341, ¶ 11, 171 P.3d 480 ("First, the court must find that a specific ground for termination exists, finding the parent unfit or incompetent based on a ground enumerated in [section 78A-6-507] of the Utah Code." (citation and internal quotation marks omitted)). As to this first step, the district court in this case found that Child lived with both families at one point or another from 2001 to 2008. The district court found that for the period from January 2009 to July 2010, it was undisputed that Father and Stepmother had primary custody of Child and that Mother did not pay child support during that time period. The district court then noted that the amount of contact between Mother and Child during this period was the subject of some dispute. However, the district court found by clear and convincing evidence that from July 2010 until Mother's arrest in November 2010, Mother struggled with drug addiction and had no meaningful contact with Child. Likewise, the district court indicated that no evidence showed Mother had any meaningful contact with Child from the time Mother was jailed until the date the petition was filed.[4] Based on these findings, the district court further found that Mother had failed to communicate with Child for a period of more than six months, failed to show the normal interest of a parent without just cause, and abandoned Child. See generally Utah Code Ann. § 78A-6-508(1) (LexisNexis 2012) ("[It is prima facie evidence of abandonment that the parent ... hals] failed to communicate with the child by mail, telephone, or otherwise for six months; [or has] failed to have shown the normal interest of a natural parent, without just cause. ...").
15 At this point, the district court explained that the burden shifted to Mother to demonstrate that during that period of time *375 there were not grounds for terminating her parental rights. See In re K.J., 2013 UT App 237, ¶ 26, 327 P.3d 1203 ("While the petitioner bears the ultimate burden of proving the grounds for termination by clear and convincing evidence, once evidence is presented that would justify termination, the burden shifts to the parent to persuade the court that the [petitioner] had not established [the ground for termination] by clear and convincing evidence." (alterations in original) (citations and internal quotation marks omitted)). The district court found that Mother had not met that burden with respect to the period of November 2010 to May 2011.
T 6 The district court then turned to evaluating the second step involved in a petition to terminate parental rights; whether it would be in Child's best interest to terminate Mother's parental rights. See In re Adoption of T.H., 2007 UT App 341, ¶ 11, 171 P.3d 480 ("Second, after finding one of the enumerated grounds, the court must find that termination of parental rights serves the best interests of the child." (citation and internal quotation marks omitted)). The district court found that Child "has a caring, loving family with whom he's permanently residing" and that Stepmother "has treated [Child] in every respect as her own child." The district court then explained it would not decide whether Stepmother or Mother was a better parent, but rather would decide whether it was in Child's best interest that Mother's parental rights be terminated. The district court stated that it had heard "very little evidence" on the issue of best interest and had not heard testimony from any therapist indicating how Child understood his relationship with Mother. In addition, the district court viewed the evidence that Stepmother presented on the issue as "understandably self interested." As a result, the district court declared that it "hald] not heard evidence that would convince [the court] that it would be in [Child's] best interest to terminate [Mother's] parental rights, at least so long as she remains fit." The district court further explained that there was "no question" that Mother was not fit to be a parent "as long as she was using ... drugs and as long as she was incarcerated." However, the district court stated that it believed that Mother can be a fit parent "[if she can maintain sobriety" and that Mother could possibly have a relationship with Child in the future. After conducting this analysis, the district court denied Stepmother's petition.
T7 Thereafter, the district court entered a short written order denying Stepmother's petition to terminate Mother's parental rights, dismissing Stepmother's petition to adopt, and noting that it had made its findings of fact and conclusions of law on the record. Stepmother subsequently filed a motion to amend and for a new trial, arguing that the district court did not make adequate findings regarding Child's best interest and that the court did not state the standard it was using for evaluating best interest. Mother did not file a memorandum in opposition. Nevertheless, the district court denied Stepmother's motion to amend and "[stood] by the findings and conclusions previously made, based on the evidence presented in the hearings." Stepmother now appeals.
ISSUES AND STANDARDS OF REVIEW
18 On appeal, Stepmother contends that the district court erred in denying her motion to strike Mother's pleadings. [5] Motions to strike pleadings or parts thereof are addressed to the judgment and discretion of the trial court"" Midland Funding LLC v. Sotolongo, 2014 UT App 95, 18, 825 P.3d 871 (quoting Francis v. State, 2018 UT 65, 119, 321 P.3d 1089). Generally, "Iwle review a district court's ruling on a motion to strike a pleading for an abuse of that disceretion." Id. However, Stepmother's argument focuses on the proper construction of the statutory provisions governing notice of adoption proceedings. "[MJatters of statutory construction are questions of law that are reviewed for correctness...." In re Adoption of A.F.K., 2009 UT App 198, 116, 216 P.3d 980 (alteration in original) (citation and internal quotation marks omitted); see also In re Baby Boy Doe, 894 P.2d 1285, 1287 (Utah Ct.App.1995) (reviewing for correct *376 ness the denial of a motion to strike another party's motion to dismiss where the timeliness of the motion to dismiss depended upon proper construction of the court rule or statute under which the motion to dismiss was brought).
19 Stepmother also argues that the district court did not enter findings sufficient to support its conclusion that it was not in Child's best interest to terminate Mother's parental rights. "We review the legal adequacy of findings of fact for correctness as a question of law." Jacobsen v. Jacobsen, 2011 UT App 161, ¶ 15, 257 P.3d 478 (citation and internal quotation marks omittted). "Unless the record clearly and uncontrovertedly support[s] the trial court's decision, the absence of adequate findings of fact ordinarily requires remand for more detailed findings by the trial court." Woodward v. Fazzio, 823 P.2d 474, 478 (Utah Ct.App.1991) (alteration in original) (citation and internal quotation marks omitted).
ANALYSIS
I Motion to Strike
110 Stepmother argues that the district court erred in denying her motion to strike Mother's pleadings. According to Stepmother, Mother was required by statute to file a motion to intervene within thirty days after receiving notice of the adoption proceeding. Stepmother further contends that by failing to file a motion to intervene within that time frame, Mother forfeited her parental rights to Child.
{11 In support of her argument that Mother forfeited her parental rights, Stepmother relies on section T8B-6-110 of the Utah Adoption Act. Subsection (6)(a) of this section explains, "A person who has been served with notice of an adoption proceeding and who wishes to contest the adoption shall file a motion to intervene in the adoption proceeding: (i) within 30 days after the day on which the person was served with notice of the adoption proceeding...." Utah Code Ann. § 78B-6-110(6)(a) (LexisNexis Supp. 2013). This section further provides,
A person who fails to fully and strictly comply with all of the requirements de-seribed in Subsection (6)(a) within 30 days after the day on which the person was served with notice of the adoption proceeding:
(i) waives any right to further notice in connection with the adoption;
(forfeits all rights in relation to the adoptee; and
(ii) is barred from thereafter bringing or maintaining any action to assert any interest in the adoptee.
Id. § 78B-6-110(6)(b). On appeal, Stepmother asserts that because Mother received notice of the adoption proceeding on May 18, 2011, Mother's motion to extend, which was filed more than thirty days later on June 20, 2011, was untimely. Stepmother argues that Mother's late filing constitutes a "fail{lure] to fully and strictly comply" with the requirements of subsection (6)(a) and that Mother has therefore "forfeit[ed] all rights in relation to [Child]." See id.
112 "As an appellate court, our power of review is strictly limited to the record presented on appeal. Parties claiming error below and seeking appellate review have the duty and responsibility to support their allegations with an adequate record." Gorostieta v. Parkinson, 2000 UT 99, ¶ 16, 17 P.3d 1110 (citation and internal quotation marks omitted); see also State v. Nielsen, 2011 UT App 211, ¶ 4, 257 P.3d 1103 (per curiam) ("An appellant has the burden to provide an adequate record for review." (citing Utah R.App. P. ll(e)@))). As part of fulfilling this duty, the appellant "must ... provide the appellate court with the parts of the record that are central to the determination of his appeal." Allen v. Friel, 2008 UT 56, 110, 194 P.3d 903; see also Utah R.App. P. 24(a)(11)(C) (requiring the appellant's brief to contain an addendum including "those parts of the record on appeal that are of central importance to the determination of the appeal, such as the challenged ... conclusions of law, memorandum decision, [or] the transcript of the court's oral decision"). When an appellant fails "to designate critical portions of the record as part of the record on appeal," see State v. Johnson, 2012 UT App 290, ¶ 7, 288 P.3d 594, this court pre *377 sumes the regularity of the proceedings below, see Gorostieta, 2000 UT 99, ¶ 16, 17 P.3d 1110.
113 Here, Stepmother has not carried her burden to ensure the record is adequate for review because she has provided us only with the minute entry of the district court's order that she claims is in error. This minute entry simply states that Stepmother's motion to strike Mother's responses is denied and does not indicate the grounds for the court's order. Stepmother has failed to include the transcript of the motion hearing in the record on appeal. Without a tran-seript of the hearing during which the court considered and ruled on Stepmother's motion, we have no way to ascertain the district court's basis for its ruling, especially in light of the concise nature of the district court's minute entry. See Summer v. Summer, 2012 UT App 159, ¶ 11, 280 P.3d 451. Moreover, in her briefing to this court, Stepmother does not explain or address the reasoning for the district court's decision to deny her motion to strike. See generally Duchesne Land, LC v. Division of Consumer Prot., 2011 UT App 158, ¶ 8, 257 P.3d 441 (concluding that by failing to address the actual basis for the district court's ruling, the appellants failed to demonstrate error).
T 14 Due to Stepmother's failure to provide an adequate record on appeal, we do not reach the merits of her argument regarding the statutory requirements under the Utah Adoption Act. We therefore affirm the district court's denial of Stepmother's motion to strike.[6]
II. Findings on Best Interest
{15 Stepmother challenges the district court's determination that termination of Mother's rights was not in Child's best interest. Specifically, Stepmother argues that after having found grounds for termination, the district court failed to make adequate findings of fact on the issue of whether termination of Mother's parental rights would be in Child's best interest.
[ 16 In order to terminate parental rights, the court must make two separate findings supported by clear and convincing evidence. In re Adoption of T.H., 2007 UT App 341, ¶¶ 11, 15, 171 P.3d 480; see also In re A.C.M., 2009 UT 30, ¶ 23, 221 P.3d 185. "First, it must find grounds for termination under Utah Code section 78A-6-507." In re A.C.M., 2009 UT 30, ¶ 23, 221 P.3d 185. See generally Utah Code Ann. §§ 78A-6-506 to - 508 (LexisNexis 2012) (setting forth the grounds for termination and evidentiary presumptions and factors that shall be considered in determining if grounds for termination exist). "Second, [it] must find that termination of the parent's rights is in the best interests of the child." In re A.C.M., 2009 UT 30, ¶ 23, 221 P.3d 185; see also In re Adoption of T.H., 2007 UT App 341, ¶ 15, 171 P.3d 480 (instructing that both findings are required when evaluating the termination of parental rights even when the issue arises in the context of an adoption proceeding). Here, the district court determined that Stepmother had established by clear and convincing evidence that grounds existed to terminate Mother's parental rights. See Utah Code Ann. § 78A-6-507(1) (listing grounds for termination). Even though it found grounds for termination, the district court declined to terminate Mother's parental rights, reasoning that Stepmother had not established that termination would be in Child's best interest because Mother could *378 possibly be a fit parent going forward. On appeal, Stepmother takes issue with the adequacy of the district court's findings to support its best interest determination.
117 "(Iln every case, the best interest of the child is of paramount importance in determining whether the child-parent relationship should be permanently severed." In re J.D., 2011 UT App 184, ¶ 26, 257 P.3d 1062. "[Wlhile evidence of unfitness may be probative of both factors of the termination analysis, the best interests analysis includes consideration of the impact of termination on the child, rather than simply on evaluating whether the statutory grounds for termination have been met." In re M.J., 2013 UT App 122, ¶ 26, 302 P.3d 485 (citation and internal quotation marks omitted). "In determining whether termination of a parent's rights is in the best interest of a child, the ... court must, at a minimum, consider [the statutory factors]." See In re D.R.A., 2011 UT App 397, ¶ 10, 266 P.3d 844. Those factors include
(a) the physical, mental, or emotional condition and needs of the child and his desires regarding the termination, if the court determines he is of sufficient capacity to express his desires; and
(b) the effort the parent ... [has] made to adjust [her] cireamstances, conduct, or conditions to make it in the child's best interest to return him to his home after a reasonable length of time, including ...
(i) payment of a reasonable portion of substitute physical care and maintenance, if financially able;
(ii) maintenance of regular parent-time or other contact with the child ...; and
(iii) maintenance of regular contact and communication with the custodian of the child.
Utah Code Ann. § 78A-6-509(1) (LexisNexis 2012). Further, "the court may also consider any other evidence that is probative of what is in the child's best interest." In re T.E., 2011 UT 51, ¶ 18, 266 P.3d 739 (citing Utah Code Ann. § 78A-6-509(1) (LexisNexis Supp.2011) (current version at id. (2012))).
{18 Although we have "recognize[d] that only rarely will a child's best interests not be served by terminating the rights of an unfit parent," In re D.R.A, 2011 UT App 397, ¶ 21, 266 P.3d 844; see also In re Adoption of AFK, 2009 UT App 198, T 83, 216 P.3d 980 ("When a party proves that the parental bond was destroyed under the abandonment analysis, this showing ordinarily satisfies the best interest requirement necessary to terminate parental rights."), we also have recognized that "[it is conceivable that grounds for termination may exist, but termination nonetheless is not in the best interest of the child[ ]," In re E.R., 2001 UT App 66, ¶ 13, 21 P.3d 680; see also id. 112 ("[A] situation may arise where there are grounds for termination, and adoption would be the best goal for the children, but at the time of the termination hearing, termination may not be in the best interest of the children."). Indeed, "Utah courts have declined to terminate parental rights, even after finding parental misconduct, where it is not in the child's best interests." In re B.M.S., 2003 UT App 51, 18, 65 P.3d 639. For example, termination may not be in the best interest of a child when it would result in the loss of the child's rights. See In re E.R., 2001 UT App 66, ¶ 13, 21 P.3d 680. The case of In re B.M.S., 2003 UT App 51, 65 P.8d 639, illustrates such a circumstance. There, the juvenile court decided not to terminate a father's parental rights even after it found abandonment and neglect as grounds for termination. Id. 11 15-16. On appeal, we affirmed the juvenile court's conclusion that termination would not be in the child's best interest, "because termination would end all [the father's] support obligations to his legal child." Id. 120. Thus, there are situations in which a finding of a ground for termination does not inevitably lead to a finding that termination is in the best interest of a child. See, eg., In re D.R.A., 2011 UT App 397, ¶ 19, 266 P.3d 844 (concluding that termination was premature where the mother argued that "the continuity and stability that flow from maintaining her visitation rights [was] in Daughter's best interest" and where "Daughter [had] an established, loving relationship with Mother, [was] generally doing well in her current placement, and object[ed] to termination and adoption"); In re R.A.J., 1999 UT App 329, ¶ 24, 991 P.2d 1118 (affirming the juvenile *379 court's refusal to terminate parental rights based on the failure of the petitioners to show that termination was in the child's best interest, and noting that "the court did not err in failing to presume that, once it found grounds for termination, termination was in the child's best interests").
%19 In considering whether to terminate parental rights-and to permit meaningful appellate review of the court's ultimate determination-the district court's findings "must be sufficiently detailed and include enough subsidiary facts to clearly show the evidence upon which they are grounded." In re S.T., 928 P.2d 393, 398 (Utah Ct.App.1996) (citing Woodward v. Fazzio, 823 P.2d 474, 477 (Utah Ct.App.1991)); see also Utah R. Civ. P. 52(a) ("In all actions tried upon the facts without a jury ..., the court shall find the facts specially and state separately its conclusions of law thereon. ..."). However, the court need not "separately hear and consider evidence pertaining to unfitness and best interests." In re S.T., 928 P.2d at 399. Similarly, the court need not render "two different sets of findings and conclusions." Id. at 899-400. And in weighing the statutory factors, the court is not required to expressly refer to the factors, but the court's findings ought to be sufficiently detailed to demonstrate that the court's analysis considered the substance of those factors. CL. In re M.C., 940 P.2d 1229, 1236 (Utah Ct.App.1997) ("Onee the trial court has found, as it did in this case, that there has been an incident of serious child abuse, it is incumbent upon the trial court to enter sufficiently detailed findings of fact explaining why a parent's rights are nonetheless to be preserved."); In re S.T., 928 P.2d at 400 ("While the juvenile court did not expressly refer to the statute when considering [the best interests] factors, the court's findings are replete with detailed discussion of the offered services, the children's conditions and needs, and appellants' efforts.").
120 "[Als a practical matter, where grounds for termination are established, the conclusion that termination will be in the child[ J's best interest follows almost automatically." In re J.D., 2011 UT App 184, ¶ 34, 257 P.3d 1062 (Orme, J., concurring specially); cf. In re J.R.T., 750 P.2d 1234, 12838 (Utah Ct.App.1988) ("If the parent-child relationship has been destroyed by the parent's conduct, or lack of conduct, it is usually in the best interest of the child to terminate that relationship and allow the child an opportunity to establish a meaningful relationship with loving, responsible parents."). Nevertheless, the existence of grounds for termination is not necessarily inconsistent with a finding that termination is not in a child's best interest. Cf. In re Adoption of T.H., 2007 UT App 341, ¶ 15, 171 P.3d 480 (explaining that the court is required to find both grounds for termination and that termination is in a child's best interest before terminating parental rights); In re E.R., 2001 UT App 66, ¶ 14, 21 P.3d 680 (noting that "a permanency goal of adoption is not necessarily inconsistent with ongoing parental rights"). In such cases, the court's "findings should ... articulate[ ] the court's reasoning where it simultaneously declined to terminate parental rights" and found grounds to terminate those rights. Cf. In re E.R., 2001 UT App 66, ¶ 14, 21 P.3d 680 ("[IWle vacate the permanency order and remand for further findings articulating the reasoning behind simultaneously denying the petition to terminate parental rights while setting a permanency goal of adoption. ...").
1 21 In this case, we agree with Stepmother that the district court's best interest analysis is not sufficiently detailed. Notwithstanding the district court's stated intent to resolve "whether given all of the facts and cireumstances(, termination] is in [Child's] best interest," the district court's analysis does not indicate which particular facts and cireumstances it relied upon in reaching its conclusion that terminating Mother's rights would not be in Child's best interest. Rather, the district court's best interest analysis is conclusory and does not incorporate an on-the-record consideration of the statutory factors involved in conducting a best interest analysis. For instance, the district court stated that it heard no evidence regarding Child's wishes or the nature of his understanding of his relationship with Mother, but the court otherwise did not address Child's "physical, mental, or emotional condition." *380 See Utah Code Ann. § 78A-6-509(1)(a). Instead, the district court merely noted that Stepmother presented "very little evidence" on the issue of best interest and then stated that the court was not "convinee[d]" by that evidence that it would be in Child's best interest to terminate Mother's parental rights.
T22 Without more detailed findings, we cannot discern the basis for the conclusion that this is one of those rare cases where termination is not in the best interest of the child despite the existence of grounds for termination.[7] Because the district court's statements "provide no insight into the evi-dentiary basis for the trial court's decision," see Woodward, 823 P.2d at 478, and do not explain why the two requirements for termination are not "satisfied hand-in-glove" in this case, see In re J.D., 2011 UT App 184, ¶ 36, 257 P.3d 1062 (Orme, J., concurring specially), the district court's findings are inadequate. Accordingly, we reverse the district court's order denying the petition to terminate parental rights. "We do not intend our remand to be merely an exercise in bolstering and supporting the conclusion already reached." Woodward, 823 P.2d at 479 (citation and internal quotation marks omitted). Rather, upon remand, the district court should reassess whether termination of Mother's parental rights is in Child's best interest and shall enter findings and reasoning adequate to support its ultimate decision to grant or deny Stepmother's petition to terminate.
CONCLUSION
1 23 We affirm the district court's denial of Stepmother's motion to strike Mother's pleadings because Stepmother has not presented an adequate record on appeal to permit us to consider this issue on the merits. The district court's findings regarding Child's best interest are not sufficiently detailed. We therefore reverse the district court's order denying the petition to terminate and remand for further consideration and the entry of adequately detailed findings.

. Mother was still in jail at the time. Mother's motion to extend was not filed in the district court until June 20, 2011, but she mailed her motion to extend from jail on June 15, 2011.

. Where no changes material to our analysis have occurred, we cite the most recent version of the Utah Code Annotated.

. Indeed, there is no dispute that Mother has not seen Child since August 2010.

. Mother did not take the opportunity to file a brief in this court. As a consequence, we have considered this matter on Stepmother's brief alone.

. Following the filing of Mother's answer and motion to intervene, Stepmother filed a second motion to strike Mother's responses and a motion to terminate parental rights on a summary basis. As with her first motion to strike, Stepmother cited section 78B-6-110 of the Utah Adoption Act. But in contrast to her first motion to strike, Stepmother's second motion to strike argued that Mother's answer and motion to intervene did not comply with the court's prior order, which had denied Stepmother's first motion to strike and which had given Mother ten days to file an answer. The district court denied both of Stepmother's motions. The transcript from the hearing during which the district court ruled on Stepmother's second motion to strike is in the record on appeal. However, on appeal, Stepmother does not effectively challenge the district court's ruling on her second motion to strike. Instead, Stepmother's argument on appeal focuses on the issue presented in her first motion to strike: whether Mother's motion to extend complied with statutory requirements. As we have explained, Stepmother has not presented an adequate record for us to review the court's ruling on that issue.

. We also note that Stepmother argued to the district court that termination would be in Child's best interest especially if Father were to have an untimely death. In that event, Child would be returned to Mother, his surviving parent, even though the district court had adjudicated the existence of grounds for termination of Mother's rights. Stepmother also argued that Child would be returned to Mother in the event that Father, a member of the United States Army Reserve, was deployed. The district court did not make any findings relating to this argument, even though Father's potential deployment would appear to be relevant to the issue of Child's best interest.